ZAINEY, J.
MARCH 30, 2006

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

PAUL SCHLUMBRECHT, SR., ET AL                 CIVIL ACTION

VERSUS                                      NO. 03-3001

FIDELITY HOMESTEAD ASSOCIATION             SECTION "A"(5)

### ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc 68)**, filed by Defendant Fidelity Homestead Association.  Plaintiffs, Paul and Sarah Schlumbrecht, oppose the motion.  The motion, set for hearing on January 25, 2006, is before the Court on the briefs without oral argument.  For the reasons that follow, the motion is **DENIED**.

## I.    BACKGROUND

Plaintiff Paul Schlumbrecht is a former employee of Defendant Fidelity Homestead Association.  Mr. Schlumbrecht began working for Fidelity in 1987.  Throughout his employment, he worked in the Collections Department.  He was initially in charge of mortgage collections.  He allegedly acquired new responsibilities throughout his employment, including consumer loan work, overdraft loan work and loan reviews.  At the time of his termination, he

was Assistant Vice President of Special Assets.  Plaintiffs claim that Mr. Schlumbrecht was discharged by Defendant on June 16, 2003.  (Original Complaint, ¶ 10).  He filed a complaint based on age discrimination with the Equal Employment Opportunity Commission on August 15, 2003.  (*Id*., ¶ 1a).  He then filed suit in this Court on October 24, 2003, contending that the requisite amount of time had passed since the filing of his complaint with the EEOC.

Plaintiff contends that the reasons proffered by Fidelity for his discharge are a pretext for discrimination under the ADEA and ERISA.  (*Id.*, ¶ 13).  He was 54 years old at the time of the termination of his employment.  (*Id*., ¶ 9).  Plaintiff asserts *inter alia* that he was, due to his age and status, harassed to the point of serious emotional and mental harm through outrageous and intentional conduct, which was not visited upon younger, non-targeted employees.  (*Id*., ¶ 14).

He contends that the harassment began in January, 2000.  (First Supp. and Amend. Comp., ¶ 12).  He asserts that in November of 1999, he volunteered to assist the Loan Servicing Department with the backlog of loan folder reviews.  (*Id.*, ¶ 13(a)).  He and two other employees were to review up to three loan folders a day.  (*Id.*).  Plaintiff contends that in January of 2000, he was permanently assigned the duty of loan folder reviews in addition to the job duties on his job description.  (*Id*., ¶ 13 (b)).  He testified that at the time he was assigned this responsibility, the loan review work was slow.  (Schlumbrecht Depo., Vol. 1, p. 27).  However, as interest rates decreased, Fidelity's business increased and thus loan reviews increased.  (*Id.*, p. 55).

Plaintiff alleges that in June of 2000, he had a bypass surgery, and Joe Rohr, an employee who previously helped with the loan folder review backlog, was removed from those duties. (First Supp. and Amend. Comp., ¶ 13(e)).  According to Plaintiff, the unreasonable workload

was designed to cause stress and discourage him from continuing to work.  (*Id.*).  He contends that the pressure produced by the workload contributed significantly to his health problems and stress.  (*Id.*).  He further contends that upon returning to work after his surgery, he was told that going to cardiac rehab could mean losing his job.  (*Id.*).

Plaintiff alleges that his requests for assistance to catch up on the loan reviews were denied.  (*Id.*, ¶¶ 13(g)-(h), (j)).  He asserts that he and Mark Leroux, another employee, worked on some Saturdays to catch up.  (*Id.*, ¶ 13(g)).  He claims that, given the arbitrary nature in which the folders were delivered and the vast numbers in which they were delivered, he was unable to reduce the backlog and catch up.  (*Id.*, ¶ 13(h)).

Plaintiff alleges that in 2001 he requested a transfer to another department.  (*Id.*, ¶ 13(i)) His request was denied.  (*Id.*).  He contends that George Binder, his supervisor at the time, told him that he was too old to be a Loan Executive, and that he made too much money to be a Branch Manager.  (*Id.*).

Plaintiff contends that between June of 2001 and February of 2003, he was continuously forced to work after hours and weekends to keep up with the loan folder workload.  (*Id.*, ¶ 13(m)).  He further asserts that other department heads and employees similarly situated received ample personnel to perform their jobs and additional assistance when needed, and did not have to work extra hours to catch up on a backlog.  (*Id.*, ¶ 13(n)).

Plaintiff alleges that Mark Leroux was transferred out of his department in January of 2003.  (*Id.*, ¶ 13(o)).  He contends that in February of 2003, he was informed that he would have to arrive to work earlier, begin working on files immediately, eliminate his coffee breaks, drink

his coffee at his desk, report for work every Saturday until all files were completed, and train Jules Adams, another employee, on reviewing loan files.  (*Id.*, ¶13(r)).  He contends that he was given a deadline of June 6, 2003 to complete the loan folder reviews and was told that failure to meet it would result in probation.  (*Id.*, ¶ 13(s)).  Failure to complete the folder reviews by July 11, 2003 would allegedly result in his termination.  (*Id.*).  Plaintiff further alleges that towards the end of his employment with Defendant, his refusal to violate the Fair Debt Collections Practices Law was used to discharge him.  (*Id.*, ¶ 14(a)).

Plaintiff contends that Defendant's alleged harassment caused serious emotional and mental harm and included the following:  the requirement that he report to work earlier than other employees; the elimination of his coffee breaks; the requirement that he report to work on Saturdays until all files were completed, even though the tasks, number of files and deadlines imposed were designed to be impossible to manage; the continuous assignment of more files than could reasonably be handled within the time he was given to handle them; impossible and unreasonable deadlines to complete work and subjection to disciplinary action for failure to meet deadlines; the refusal of assistance in the handling of impossible tasks, quantities of files, and deadlines, designed to cause great emotional harm and force Plaintiff to quit; the reduction in Plaintiff's staff and simultaneous increase in responsibilities; the denial of salary increases enjoyed by other workers not similarly situated; unwarranted disciplinary actions based on false claims against Plaintiff, alleged violations that management knew were not violations, and Plaintiff's refusal to violate the law; and unfair and discriminatory performance evaluations. (Original Complaint, ¶ 14).

Plaintiff asserts that Defendant has violated the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), and has committed the tort of intentional infliction of emotional distress.  (Original Complaint, ¶¶ 16, 21, 26). His wife, Sarah Schlumbrecht, has asserted claims for mental and emotional anguish, and loss of support, consortium, society and companionship.  (First. Supp. and Amend. Comp., ¶ 21).  Defendant seeks summary judgment on all of Plaintiffs' claims.

II.   **DISCUSSION**

*A. The Parties' Contentions*

 Defendant asserts that at the time of his termination, Mr. Schlumbrecht was Special Assets Manager and that his primary responsibility as Special Assets Manager was auditing loan files to ensure that all proper documentation had been completed.  According to Defendant, Mr. Schlumbrecht also supervised the collection process regarding delinquent loans.  Defendant contends that in February of 2003, it discovered that he was grossly behind in auditing loan files, placing it at risk of losing a significant amount of revenue.  It asserts that after the discovery of this backlog, Mr. Schlumbrecht also mishandled the collection of a delinquent loan and had some other performance issues.  Defendant further contends that Mr. Schlumbrecht was thereafter placed on probation and advised that he was subject to termination for any other lapse in performance.

Defendant asserts that it subsequently received a customer complaint against Mr. Schlumbrecht regarding the customers' attempt to purchase a piece of real estate with financing from it.  Defendant asserts that the customers indicated that Mr. Schlumbrecht had caused their

real estate deal to fall through.  It claims that Mr. Schlumbrecht was terminated based on the performance issues described above.

Defendant argues that Plaintiffs' ADEA claim fails as a matter of law.  It contends that it has shown a legitimate, nondiscriminatory reason for Mr. Schlumbrecht's termination and that he cannot demonstrate that Defendant's stated reasons for terminating his employment are false. In support of this contention, Defendant argues that Mr. Schlumbrecht admitted to the backlog of unreviewed loan files and admitted that the backlog placed Fidelity at risk of losing substantial revenue.  It further contends that Mr. Schlumbrecht admitted to the issues regarding the delinquent loan customer and that his counseling was warranted.

Further, in regards to the alleged customer complaint, Defendant argues that Mr. Schlumbrecht admitted that he provided advice to the seller and that the buyers, Defendant's customers, had grounds to be upset.  Defendant also argues that Mr. Schlumbrecht admitted that he failed to determine whether the buyers were Fidelity customers and that it would have been prudent for him to have done so.  Defendant further asserts that Mr. Schlumbrecht admitted that, assuming the allegations in the customer complaint were true, such would constitute grounds for termination.  It also suggests that even if it was mistaken in believing the customers/buyers and disbelieving Mr. Schlumbrecht, the discipline imposed on him was based on its good faith belief that Mr. Schlumbrecht had engaged in wrongdoing, which constitutes a legitimate reason for terminating his employment.

Defendant further argues that Mr. Schlumbrecht cannot establish pretext by demonstrating differential treatment because he has no evidence of such.  According to

6

Defendant, Mr. Schlumbrecht admits that he is unaware of anyone engaging in similar conduct who was not terminated and that he is aware of persons under 40 whose employment was also terminated by Defendant.  Further, it argues that while Mr. Schlumbrecht alleges that younger persons with lighter workloads in other departments received assistance, he has no support for such an assertion and in fact testified that he was not in a position to know what the workload of other departments was at any given time.  Defendant contends that because Mr. Schlumbrecht lacks personal knowledge regarding this allegation of differential treatment, it fails as a matter of law.  It also asserts that even if Mr. Schlumbrecht possessed personal knowledge, it would still fail as a matter of law because he must show that he and those persons to which he compares himself had identical circumstances, which he cannot do.

Defendant also argues that Mr. Schlumbrecht cannot show any discriminatory animus.  In support of this argument, it contends that Mr. Schlumbrecht testified that he and Boyd Boudreaux, who was his supervisor at one point and is now the President/CEO of Fidelity, got along well and that Boudreaux provided him with assistance in clearing the backlog of loan files.  Defendant further suggests that Boudreaux in fact provided him with assistance from three people.  Defendant argues that Mr. Schlumbrecht's age discrimination claim fails because his only support for it rests on conclusory assertions and subjective beliefs, which are insufficient as a matter of law.

Defendant contends that any claim of age-based harassment (which Plaintiffs do not clearly set forth) fails as a matter of law because Mr. Schlumbrecht cannot produce sufficient evidence of severe and pervasive conduct that interfered with his working conditions.  It

suggests that the allegations regarding harassment constitute mere work gripes that are insufficient as a matter of law and that he cannot provide any evidence that the conduct he alleges was age-based.

Defendant also contends that Mr. Schlumbrecht's claim for intentional infliction of emotional distress fails as a matter of law.  Defendant suggests that allegations far more egregious than Mr. Schlumbrecht's complaints regarding workload, denial of assistance, his termination, and questioning and/or badgering regarding loan foreclosure have been held insufficient to survive a motion for summary judgment.  Defendant also argues that no issues of fact have been presented regarding a deliberate pattern and/or intent to harm.  It further contends that if Mr. Schlumbrecht had any "special susceptibility" to emotional distress, it was unaware of it.

Defendant further contends that Mr. Schlumbrecht's ERISA claim fails as a matter of law because he cannot present any evidence that he was terminated based on his future entitlement to benefits.  It suggests that while a loss of benefits may have been a "consequence" of Mr. Schlumbrecht's termination, he has no evidence that it constituted a motivating factor.

Finally, Defendant contends that Mrs. Schlumbrecht's claim fails because it is an appendage to Mr. Schlumbrecht's claim for intentional infliction of emotional distress, which fails as a matter of law.

Plaintiffs oppose, arguing that they have produced ample evidence supporting their ADEA claim.  They argue that they have demonstrated that defendants' reasons for Mr. Schlumbrecht's termination are pre-text.  Citing their voluminous stack of exhibits, they contend

that they have produced direct evidence of age animus and age harassment in the form of comments, disparate treatment of other older workers, and disparate treatment of others similarly situated.

Plaintiffs also argue that they have clearly established Defendant's intent to inflict severe emotional and physical distress and harm in their efforts to force Mr. Schlumbrecht to resign, citing the testimony and declarations of two doctors, a therapist, and several other persons. Plaintiffs contend that Defendant knew of Mr. Schlumbrecht's fragile heart and health, and they played upon this with the expectation of making Mr. Schlumbrecht quit, and that this constitutes extreme and outrageous conduct. They further contend that the emotional distress suffered by Mr. Schlumbrecht was severe and that Defendant intended to inflict such distress or knew that it would be certain or substantially certain to result from its conduct. Plaintiffs assert that Defendant's harassment constituted a deliberate pattern over a period of time, and the record is replete with questions of fact regarding evidence that it intended to harm Mr. Schlumbrecht.

Plaintiffs argue that summary judgment should not be granted on the ERISA claim either because they have demonstrated through the testimony of former employees of Defendant that it has targeted older employees and forced them to resign. Plaintiffs point out that older employees present a retirement expense to Defendant that younger employees do not and suggest that the evidence they have presented is circumstantial evidence that Defendant had a motive to cut this expense.

Finally, Plaintiffs argue that Mrs. Schlumbrecht's claim for loss of consortium, emotional distress, and other related damages should not be dismissed because it is clearly supported by her

unchallenged deposition testimony and declaration and the testimony and reports of a therapist regarding the effects of Mr. Schlumbrecht's ordeal.

Defendant opposes, arguing that Plaintiffs have failed to comply with Local Rule 56.2, which requires a "separate, short and concise statement of material facts as to which there is a genuine issue to be tried."  It contends that Plaintiffs have not submitted such a statement and have not identified material facts which need to be tried, and thus its statement of undisputed material facts should be deemed admitted under that rule.  Defendant further argues that Plaintiffs respond with new or different facts in Mr. Schlumbrecht's declaration rather than disputing Fidelity's facts and that a review of the record reveals that there is no dispute as to the facts.

Defendant also contends that Plaintiffs's age discrimination claim should be dismissed because Plaintiffs have failed to demonstrate any pretext for Mr. Schlumbrecht's termination.  It argues that Plaintiffs' primary complaint is that having to perform loan reviews with his other duties constituted an unreasonable work assignment.  Defendant suggests that this argument is without merit because courts have held that work assignments do not constitute an adverse employment action.  It further suggests that it is impossible to determine whether Mr. Schlumbrecht's workload was discriminatorily unreasonable because there was no co-worker who had the same duties and responsibilities, and thus the Court has no one to whom it can compare Mr. Schlumbrecht.  Further, Defendant again argues that Mr. Schlumbrecht has admitted that he has no knowledge about the workload of others.  It also points to the declaration of Mr. Schlumbrecht's replacement, Mark Leroux, and argues that it establishes that he was able

to perform as much or more work as Mr. Schlumbrecht without difficulty and without extra staff.

Defendant also responds to various other arguments made by Plaintiffs and argues that Plaintiffs' claims should be dismissed in their entirety with prejudice.

### B.  Summary Judgment Standards

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* (citing *Anderson*, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party.  *Id.* (citing *Anderson*, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.  *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### C. Local Rule 56.2

The Court will first address Defendant's contention that Plaintiffs failed to comply with Local Rule 56.2.  That rule provides that "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried.  All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  LR 56.2.  Fidelity's argument that Plaintiffs have not submitted any such statement is without merit.  Plaintiffs have included as Exhibit A a document entitled "Plaintiffs' Responses to Defendant's List of 'Undisputed' Material Facts and Plaintiff's Undisputed Material Facts Declaration of Paul Schlumbrecht, Sr."  In this document, Plaintiffs dispute some of the "material facts" set forth in Fidelity's "Statement of Undisputed Material Facts," thereby setting forth the facts as to which they believe there exists a genuine issue to be tried.  Plaintiffs have thus sufficiently complied with Rule 56.2.  While the document may not be short and concise, Defendant can hardly complain of this given that its "Statement of Undisputed Material Facts" is not exactly short and concise, as required by Local Rule 56.1.

*D. ADEA*

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The standard applied to determine an ADEA claim depends on whether the Plaintiff relies on direct or circumstantial evidence to establish his case of age discrimination.  In this

case, Plaintiffs rely on circumstantial evidence.[1]

Thus, the burden-shifting analysis set forth in *McDonnel Douglas Corp. v. Green* is applicable to this case. *See, e.g., Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under that analysis, a plaintiff must first establish a prima facie case of age discrimination by showing that "'(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *Id.*

After the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its employment action.  *Id.*  Once the defendant meets its burden, "the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination."  *Id.*  The Fifth Circuit has recently modified this last portion of the *McDonnell Douglas* approach.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  Previously, with respect to causation, the Fifth Circuit had required that a plaintiff advancing an ADEA claim using only circumstantial evidence (as here) prove that discriminatory animus was the "determinative basis for his termination."  *Machinchick v. PB*

---

[1]  Plaintiffs suggest that they rely upon direct evidence of age discrimination.  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 (5th Cir. 2004).  Plaintiffs fail to explain how the evidence they have submitted constitutes direct evidence.  Furthermore, even though they allege that the evidence they provide is direct evidence, they do not address the proper framework for analyzing a case in which such evidence is presented.  Rather, they refer to *McDonnell-Douglas Corp.* (which provides the framework for circumstantial evidence cases) in making their arguments regarding age discrimination.

*Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005).  The Fifth Circuit has found that, as a practical

matter, under this requirement, a "plaintiff must put forward evidence rebutting each of a

defendant's nondiscriminatory explanations for the employment decision at issue."  *Id.*

Accordingly, a plaintiff who relies on "evidence of pretext to create a fact issue on

discriminatory intent falters if he fails to produce evidence rebutting all of a defendant's

proffered nondiscriminatory reasons."  *Id.*  This approach differs from the mixed-motive analysis

(traditionally used in direct evidence cases), under which a plaintiff need only prove that

discriminatory animus was a "motivating factor" in an adverse employment decision.  *Id.* at 351-

52.

   In *Rachid v. Jack  in the Box, Inc.*, the Fifth Circuit held that direct evidence of

discrimination is no longer necessary for a plaintiff to receive a mixed-motive analysis for an

ADEA claim.  *Rachid v. Jack  in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).  Thus, now a

plaintiff may satisfy his burden under the final step of the *McDonnell Douglas* analysis in one of

two ways.  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005).  In opposing a

motion for summary judgment, "the Plaintiff must offer sufficient evidence to create a genuine

issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for

discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of

the reasons for its conduct, and another motivating factor is the plaintiff's protected

characteristic (mixed-motive alternative)."  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312

(5th Cir. 2004).  Under the latter approach, if a plaintiff demonstrates that age was a motivating

factor in the employment decision, "it then falls to the defendant to prove that the same adverse

employment decision would have been made regardless of discriminatory animus.  If the employer fails to carry this burden, plaintiff prevails." *Id*.

Defendant concedes that Plaintiffs have met their initial burden of establishing a prima facie case of age discrimination because Mr. Schlumbrecht's replacement, Mark Leroux, though over 40, is younger than Mr. Schlumbrecht.  (Def. Opp., p. 4, n. 4).  Thus, the burden shifts to Defendant to proffer a legitimate, nondiscriminatory reason for its actions.  Defendant has set forth such a reason for terminating Mr. Schlumbrecht, pointing to alleged deficiencies in the performance of his responsibilities, including his gross failure to timely review loan files and the mishandling of a loan account for a delinquent loan customer.  Defendant asserts that the final straw occurred when it received correspondence from its customers, who indicated that Mr. Schlumbrecht had caused their real estate deal to fall through.

Because Defendant has met its burden, the burden shifts back to Plaintiffs.  Plaintiffs must offer sufficient evidence to create a genuine issue of material fact either (1) that Defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that Defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Plaintiffs have offered sufficient evidence to defeat summary judgment on their ADEA claim.  Considering all the evidence, the Court finds that there is at least a genuine issue of material fact regarding whether age was a motivating factor in Defendant's decision to terminate

Mr. Schlumbrecht's employment.

Of particular relevance is Mr. Schlumbrecht's testimony that after he submitted a job transfer request, his supervisor at the time, George Binder, told him that he was making too much money to be a Branch Manager, and he was "too old" to be a Loan Executive, and he should be happy where he was.  (Schlumbrecht Depo., Vol. 1, p. 50).  "Indirect references to an employee's age can support an inference of age discrimination."  *Hansard v. Pepsi-Cola Metropolitan Bottling Co., Inc.*  865 F. 2d 1461 (5th Cir. 1989).  *See also Rachid v. Jack In the Box, Inc.*, 376 F. 3d 305, 315 (5th Cir. 2004) (finding that age based comments precluded summary judgment because a rational finder of fact could conclude that age played a role in the decision to terminate the employee.).

*E. Hostile Work Environment Claim*

Defendant argues that Plaintiffs have not specifically set forth a hostile work environment claim.  Nonetheless, Defendant addressed the issue in its motion for summary judgment out of caution.  It argues that Plaintiffs cannot establish a prima facie case of age-based harassment because they cannot set forth sufficient evidence of severe and pervasive conduct that interfered with Mr. Schlumbrecht's working conditions.  It argues that Plaintiff's allegations regarding harassment constitute mere work gripes that are insufficient as a matter of law.

The Fifth Circuit has not yet determined whether the hostile environment framework extends to claims under the ADEA.  *McNealy v. Emerson Electric Co.*, 2005 WL 86503, 4, n. 1 (5th Cir. 2005).  This Court will assume that such a claim is available to Plaintiffs, provided they

are able to establish the necessary elements.  To establish a hostile work environment claim, a plaintiff must prove that:  (1) he is in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his status as a member of the protected class; (4) the harassment affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment and failed to take remedial action.  *Celestine v. Petroleos de Venez, S.A.*, 266 F.3d 343, 353 (5th Cir. 2001).  The Supreme Court has held that harassment affects a term or condition of employment when it is so severe that it alters the conditions of the victim's employment and creates an abusive working environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S 17, 21 (1993).

In addressing a hostile work environment claim under Title VII, the Seventh Circuit in *Haugerud v. Amery School District* noted that Title VII would not permit an employer to increase the Plaintiff's workload due to her sex.  *Haugerud v. Amery School District*, 259 F. 3d 678, 697 (7th Cir. 2001).  It considered all of Plaintiff's allegations, including an increased workload and the defendant's failure to assist Plaintiff, in concluding that a reasonable trier of fact could find that a hostile work environment existed.  *Id.*  In considering all of the evidence, the Court finds that there are genuine issues of material fact as to whether Mr. Schlumbrecht was subjected to a hostile work environment.  Thus summary judgment is inappropriate regarding that claim.

For the reasons stated above, summary judgment is inappropriate for claims for age

discrimination under state law as well.[2]

*F. Intentional Infliction of Emotional Distress Claim*

To recover for intentional infliction of emotional distress under Louisiana law, "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

"The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a retaliation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* at 1209-1210. Accordingly, many intentional infliction of emotional distress cases have involved situations in the workplace. *Id.* at 1210. Courts have held that a plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger. *Id.*

However, the Louisiana Supreme Court has clarified that conduct that might otherwise be

---

[2] Both of the parties agree that it is appropriate for the Court to analyze Plaintiffs' state law claims of discrimination under federal precedent, as Louisiana courts often look to federal anti-discrimination jurisprudence in determining discrimination claims.

18

extreme and outrageous, may be privileged under the circumstances.  *Id.*  "Liability does not attach where the actor has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress."  *Id.*  Hence, "disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable."  *Id.*  "Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time."  *Id.*

"The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered."  *Id.*  Unless the defendant has knowledge of the plaintiff's particular susceptibility to emotional distress, the defendant's "conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities."  *Id.*

In *Deus v. Allstate Ins. Co.*, the Fifth Circuit explained that "[w]hat actions are extreme and outrageous will differ according to context."  *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994) (applying Louisiana law).  The *Deus* court, applying Louisiana law, referred to two other Fifth Circuit cases, which applied Texas law, for guidance.  *Id.* (citing *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991); *Dean v. Ford Motor Credit Co.*, 885 F. 2d 300, 306 (5th Cir. 1989)).  The Court noted that in applying Texas' law of intentional infliction of emotional distress, it follows the Restatement (Second) of Torts.  *Id.*  It reasoned that because Louisiana has derived its intentional infliction of emotional distress law from the Restatement, the Restatement provides a guide to the likely decision of the Louisiana courts if confronted with

the issue.  *Id.*

Citing *Wilson*, the *Deus* court noted that "to manage its business properly, every employer must on occasion review, criticize, demote, transfer, and discipline employees."  *Id.* (citing *Wilson*, 939 F.2d 1138).  Further, the court acknowledged "that it is not unusual for an employer, instead of directly discharging an employee, to create unpleasant and onerous work conditions designed to force an employee to quit, i.e., 'constructively' to discharge the employee."  *Id.*  It explained, however, that "although this sort of conduct often rises to the level of illegality, except in the *most* unusual cases it is not the sort of conduct, as deplorable as it may sometimes be, that constitutes 'extreme and outrageous' conduct."  *Id.*

The Court further noted, "as *Dean* and *Wilson* indicate, an employer may call upon an employee to do more work than other employees, use special reviews on a particular employee and not on others to downgrade his performance, and institute long-range company plans to move younger persons into sales and management positions without engaging in extreme and outrageous conduct."  *Id.* at 515.

In his deposition, Mr. Schlumbrecht testified that it was Boyd Boudreaux who engaged in outrageous behavior by not providing him needed assistance, terminating him, repeatedly making false allegations regarding his hiding delinquencies and foreclosures, and making a joke/comment about Mr. Schlumbrecht's short height.  (Schlumbrecht Depo., Vol. 2, p. 161). Plaintiffs claim that the alleged harassment experienced by Mr. Schlumbrecht was motivated by age discrimination and was intended to exacerbate Mr. Schlumbrecht's already fragile medical

20

condition.  (First Supp. and Amend. Comp., ¶17).  They contend that Mr. Schlumbrecht has experienced post traumatic stress disorder as a result of the harassment.  Citing the testimony of Mr. Schlumbrecht's therapist, they contend that he experienced physical and mental symptoms. He was allegedly in the bathroom all the time, he was not able to eat, he had constant stomach pain, and he could not sleep.  They also contend that he was always nauseated and tired, and that he would fall asleep when he got home from work, had to be waken up to eat, and then would go to sleep again.  They further contend that he became homicidal and then suicidal.  They also suggest that Mr. Schlumbrecht's stroke and vascular disease were related to the stress he experienced at work.

In their First Supplemental and Amending Complaint, Plaintiffs list 20 medical conditions that Mr. Schlumbrecht allegedly suffered from prior to his first stroke in December of 2003.  (*Id.*, ¶2).  They contend that Mr. Schlumbrecht's employer and supervisors were aware of these conditions.

In his deposition, Mr. Schlumbrecht testified that after his bypass surgery in June of 2000, he decided not to undergo rehab as recommended by his doctor because George Binder told him, "You won't have a job.  You can't let them know that you're weak," referring to Larry and Boyd Boudreaux.  (Schlumbrecht Depo., Vol. 2, p. 99).

Boyd Boudreaux contends that he was only aware that Mr. Boudreaux had a stent insertion and bypass surgery in mid-2000.  (Def. Memo., Boudreaux Decl. 1, p. 6).  He asserts that after the surgery, it was his understanding that he was released to work without restrictions.

21

(*Id.*).  He further admits to being aware of Mr. Schlumbrecht's sleep apnea, but contends that he did not consider this to be a serious health condition.  (*Id.*).

In considering all of the evidence, the Court finds that although Plaintiff presents a very weak case of intentional infliction of emotional distress, there are genuine issues of material fact as to whether the alleged conduct engaged in by Boyd Boudreaux and/or Fidelity was extreme and outrageous, whether the emotional distress suffered by the plaintiff was severe; and whether the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.  Thus, summary judgment on the intentional infliction of emotional distress claim is denied.

### *G. ERISA Claim*

Section 510 of ERISA provides that it "shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.  "To establish a prima facie case of discrimination under ERISA, a plaintiff must establish that his employer fired him in retaliation for exercising an ERISA right or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan."  *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 260 (5th Cir. 2001).  "The plaintiff need not prove that the discriminatory reason was the only reason for discharge, but he must show that the loss of benefits was more than an incidental loss."  *Id.* at 261.  A plaintiff can use circumstantial

evidence in proving this inference of discrimination.  *Id.*

Defendant argues that Plaintiffs' ERISA claim fails as a matter of law because Plaintiff cannot present any evidence that Fidelity terminated his employment based on his future entitlement to benefits.  However, for much of the same reasons that the Court found summary judgment was inappropriate on the ADEA claim(s), it likewise finds that summary judgment is inappropriate on the ERISA claim.

*H. Mrs. Schlumbrecht's Claims*

Defendant argues that Mrs. Schlumbrecht's loss of consortium claim should be dismissed because it is an appendage to Mr. Schlumbrecht's claim for intentional infliction of emotional distress.  Defendant argues that Mr. Schlumbrecht's emotional distress claim fails, and thus Mrs. Schlumbrecht's claim also fails.  Because the Court has found that there are material issues of fact regarding Mr. Schlumbrecht's intentional infliction of emotional distress claim, summary judgment on Mrs. Schlumbrecht's loss of consortium claim is inappropriate.  Thus, summary judgment on this claim is denied.

ACCORDINGLY,

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Rec. Doc. 68)** is **DENIED**.

\* \* \* \* \* \* \*

23